UNITED STATES DISTRICT COURT FOR
THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| MARTIN J. WALSH,<br>SECRETARY OF LABOR,<br>UNITED STATES DEPARTMENT OF LABOR,<br><br>        Petitioner,<br><br>        v.<br><br>STOUT RISIUS ROSS, LLC,<br><br>        Respondent. | MISC. ACTION NO. 21-mc-55 |

**STATUS REPORT AND RENEWED REQUEST FOR ORDER ENFORCING ADMINISTRATIVE SUBPOENA**

Plaintiff Secretary of Labor ("Secretary") submits this status report pursuant to the Court's August 20, 2021 Order Re: Petition to Enforce Subpoena. (ECF 13.)

The Secretary reports to the Court as follows:

1. On July 29, 2021, the Secretary filed his Petition to enforce the administrative subpoena that he issued to Respondent Stout Risius Ross, LLC ("Stout") on April 15, 2021. (ECF 1.)

2. The Secretary's Petition to enforce the administrative subpoena pertained to requests 1 and 2 (out of 15) of the subpoena. Request 1 sought all valuations that Stout prepared in connection with any transaction consummated from January 1, 2018 to the present where an ERISA[1]-covered employee benefit plan purchased or sold securities or other equity interests of

---

[1] "ERISA" refers to the Employee Retirement Income Security Act of 1974, as amended, 29 U.S.C. § 1001 *et seq.*

any type in the employer[2] sponsoring the ERISA covered plan.  Request 2 sought annual valuations performed by Stout in the same time period for the employers identified in response to Request 1.

    3.     On August 11, 2021, Stout filed a Response in opposition to the Secretary's Petition (ECF 4) and a Motion to Modify the Administrative Subpoena (ECF 5).

    4.     The Court's August 20, 2021 Order did not rule on the parties' motions with finality, but ordered in the interim that Stout produce the valuations for what it described as "95% of transactions" for the period of January 1, 2018 to December 31, 2019.  (ECF 13.) Within 14 days of the Order, Stout was to produce the valuations that it described as "95% of transactions" for the period of January 1, 2020 to December 31, 2020.  Finally, the Court's Order strongly recommended that Stout provide a sampling of what it described as the "remaining 5%" of documents responsive to Requests 1 and 2.

    5.     In its prior filings, Stout described the "95% of transactions" as those valuations for which is also issued a fairness opinion.  Opp. to Mot. to Enforce, ECF 4, 10 n.3.  And, it described the "remaining 5%" of valuations as those issued in connection with "other types of non-material or administrative ESOP transactions, or other types of non-ESOP ERISA-covered plans" for which it does not also issue a fairness opinion.  *Id.*; El-Tahch Decl., ECF 4-11, ¶ 5.  Stout states that it centrally tracks valuations that are accompanied by fairness opinions, but does not centrally track valuations issued without fairness opinions.  L. Golumbic June 8, 2021 letter, ECF 4-6, 6 n. 5.

---

[2] The Secretary limited his requests to valuations conducted for employers with an enterprise value of over $20 million.

6. On August 20, 2021, Stout produced to the Secretary fifty-nine valuation reports responsive to Request 1 and eighty-four annual valuations responsive to Request 2. These valuations were issued in the period from January 1, 2018 to December 31, 2019.

7. On September 1, 2021, the Secretary's counsel e-mailed Stout's counsel to propose a method of sampling for the "remaining 5%" of valuations, pursuant to the suggestion by the Court at the hearing on August 18, 2021 and in its Order of August 20, 2021. The Secretary proposed that Stout's counsel, pursuant to a proposal that it made in prior correspondence and at the August 18, 2021 hearing, send an email to all of Stout's Managing Directors and ask them to identify all valuations of which they are aware that that were issued in connection with non-ESOP transactions that may be responsive to subpoena requests 1 and 2. The Secretary requested that Stout produce the identified valuations as its sample of the "remaining 5%" of valuations. The email also requested that Stout confirm that what it describes as the "remaining 5%" of valuations is comprised entirely of valuations performed for non-ESOP transactions.

8. On September 3, 2021 Stout produced to the Secretary twenty valuation reports responsive to Request 1 and fifteen annual valuations responsive to Request 2 for the period of January 1, 2020 to December 31, 2020. In its cover letter from counsel, Stout rejected the sampling methodology that the Secretary's counsel proposed in his September 1, 2021 email. Instead, Stout produced as its sample of the "remaining 5%" of valuations one sample valuation for an ESOP for which it did not also issue a fairness opinion, and one sample valuation for a non-ESOP ERISA-covered plan for which it did not also issue a fairness opinion.

9. To date, Stout has produced no valuations, either from the "95%" or the "remaining 5%," that it issued in the year 2021.

10. The Employee Benefits Administration ("EBSA") reviewed all of the valuations produced by Stout and determined that they are insufficient for the purpose of the Secretary's investigation. The Secretary's investigation seeks to review the valuations provided by Stout to all employers that engaged in "Employer Securities Transaction"—as defined in the subpoena—during the specified time frame. The investigation's purpose is to review each transaction for compliance, or non-compliance, with ERISA. The valuations that Stout has produced to date provide no information that is relevant or probative to the evaluation of the Employer Securities Transactions at issue in the unproduced valuations. Valuations of one company have no bearing on the valuation of another company. Each company is its own distinct business entity, with different products, services, and finances. Moreover, the size and structure of the ERISA plan at issue, as well as the type of securities involved in the transaction, would differ from transaction to transaction. For these reasons, the Secretary cannot rely on the produced valuations to evaluate ERISA compliance or non-compliance for those transactions for which Stout has not produced the valuations.

11. On September 30, 2021, the parties had a meet-and-confer telephone conference, pursuant to paragraph 5 of the Court's August 20, 2021 Order. On that call, the Secretary's counsel advised Stout's counsel that the produced valuations were not sufficient to satisfy the purpose of his investigation. Additionally, the Secretary's counsel expressed a desire to further explore Stout's claim of undue burden. To that end, the Secretary proposed taking the administrative deposition of the appropriate witness or witnesses to inquire into nature of the "remaining 5%"" of valuations and Stout's method of storing and searching for those valuations. Lastly, the Secretary requested that Stout produce its valuations issued in 2021, particularly those within the "95%" that it centrally tracks and for which it had not claimed a burden of production.

12.     On an October 12, 2021 meet-and-confer telephone conference, Stout advised the Secretary that it did not consent to the Secretary's proposed administrative deposition. Stout also took the position that it would not produce any further valuations, including any valuations issued in 2021. Stout takes the position that the valuations that it has produced to date are sufficient for the Secretary to determine how it conducts valuations. This, however, self-servingly misrepresents the purpose of the Secretary's investigation. The Secretary wants to evaluate how Stout conducted <u>each</u> valuation in the time period. The Secretary does not seek to learn how Stout does valuations as a general matter. Only learning how Stout conducts valuations at a general level would not satisfy the Secretary's duties under ERISA to evaluate whether a particular transaction complied with the Act.

13.     The Secretary finds Stouts claim of undue burden to be unavailing. First, taken on their face, the costs that Stout estimates to perform a manual search do not constitute an undue burden. *See* Mem. of Law, ECF 1-1, 15-16 (collecting cases). Further, these costs should not be taken at face value, because they are over-inflated and, in the case of the monetary expenses, largely fictitious. Of all of the monetary expenses listed, only $15,000 to $20,000 of outside counsel expenses would actually involve an outlay of funds by Stout. El-Tahch Decl., ECF 4-11, ¶ 17.

14.     Moreover, the electronic file search that Stout describes grossly inflates the efforts required. Stout describes a process in which it would need to, *inter alia,* repurpose an existing tool, copy and store 30 TB of data in an isolated environment, and pay daily storage costs for that environment. *Id.* at ¶ 20. Whether done intentionally or otherwise, this search protocol is unnecessarily cumbersome and inefficient. Attached is the declaration of Conrad J. Jacoby, Chief of the Litigation Support Unit of the Department of Labor's Office of the Solicitor.

**Exhibit A**, Jacoby Decl. ¶ 2.  Mr. Jacoby has over 20 years experience in litigation support, electronic discovery, and litigation information management.[3]  *Id.* at ¶¶ 3-4.  As Mr. Jacoby explains, there are established and commonly-used software tools available that would significantly reduce the search burden that Stout describes—including free and low-cost products.  *Id.* at ¶¶ 7-8.  For example, Stout could use an enterprise search tool, such as a product called "dtSearch," to search and index its files without necessarily having to copy the files to an isolated environment because the index it creates is far smaller than the documents being searched.  *Id.* at ¶ 8.

   15. Moreover, instead of having to search 30 TB of files, Stout could use available software tools to limit its search to specific file formats, and to limit its search to file names containing specific keywords.  *Id.* at ¶ 9.  The valuations that Stout has produced are all .PDF files.  Therefore, it would appear that it could target its search only to .PDF files, rather than all files.  Further, the valuations produced by Stout show that certain common terms appear in the valuation's file names, such as "Fairness Opinion," "Opinion Letter," "Transaction," and "Evaluation."  Stout could also substantially reduce the documents indexed for manual review by targeting specific terms such as these in a file name search.  *Id.* at ¶ 9.

   16. Stout's averments regarding the search that it would perform include no consideration of the various electronic search tools and document review platforms that would aid in its review of documents.  *Id.* at ¶ 10.  Document review platforms can significantly reduce

---

[3] Mr. Jacoby is also the founding Co-Chair of the District of Columbia Bar Association Litigation Section E-Discovery Committee.  He has also been active in the Sedona Conference Working Group on Electronic Document Retention and Production since 2003, where he served as Editor-in-Chief of the 2011 edition of *The Sedona Conference Database Principles: Addressing the Preservation & Production of Databases & Database Information in Civil Litigation*.  He has published over 100 articles on e-discovery, litigation information management, and legal technology topics.  Jacoby Decl. at ¶ 3.

manual document review time by sorting and de-duplicating the documents. *Id.* These platforms are commonly used in litigation and discovery, and some are available on a short-term Software-as-a-Service ("SaaS") model. *Id.*

The Secretary seeks the production of the responsive valuations for the year 2021, as well as the "remaining 5%" of valuations for all years in the stated time period. These valuations are necessary for the purpose of the Secretary's investigation, which is to review each individual transaction for ERISA compliance or non-compliance. Stout has not demonstrated that its production of these documents would impose an undue burden on it. Therefore, the Secretary respectfully requests that the Court grant the Secretary's Petition to Enforcement Administrative Subpoena and order Stout to produce all valuations responsive to subpoena requests 1 and 2.

| | |
|---|---|
| October 15, 2021 | Respectfully submitted, |
| Mailing Address: | **UNITED STATES DEPARTMENT OF LABOR** |
| U.S. Department of Labor<br>Office of the Regional Solicitor<br>1835 Market Street<br>Mailstop SOL/22<br>Philadelphia, PA 19103-2968 | Seema Nanda<br>Solicitor of Labor<br><br>Oscar L. Hampton III<br>Regional Solicitor |
| (215) 861-5165 (voice)<br>(215) 861-5162 (fax) | Richard T. Buchanan<br>Deputy Regional Solicitor |
| Dalin.Patrick@dol.gov | |
| | */s/ Patrick M. Dalin*<br>Patrick M. Dalin<br>Senior Trial Attorney<br>PA 307701<br>NY 5333851<br><br>Attorneys for Petitioner<br>U.S. Department of Labor |

## **CERTIFICATE OF SERVICE**

I certify that on October 15, 2021, I electronically filed the Secretary's STATUS REPORT AND RENEWED REQUEST FOR ORDER ENFORCING ADMINISTRATIVE SUBPOENA with the Clerk of Court by using the CM/ECF system, which will provide notice and an electronic link to this document to the attorneys of record in this case.

<u>*s/Patrick M. Dalin*</u>
Patrick M. Dalin
United States Department of Labor