**UNITED STATES DISTRICT COURT FOR
THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| MARTIN J. WALSH,<br>SECRETARY OF LABOR,<br>UNITED STATES DEPARTMENT OF LABOR,<br><br>Petitioner,<br><br>v.<br><br>STOUT RISIUS ROSS, LLC,<br><br>Respondent. | )<br>)<br>)<br>)<br>)<br>)<br>) MISC. ACTION NO. 21-mc-55<br>)<br>)<br>)<br>)<br>)<br>) |

**DECLARATION OF CONRAD J. JACOBY**

I, Conrad J. Jacoby, declare pursuant to 28 U.S.C. § 1746, under penalty of perjury, that the following is true and correct:

1. I provide this Declaration in response to the August 11, 2021 Declaration of Aziz El-Tahch, which was filed as part of Defendant Stout Risius Ross, LLC's ("Stout") Motion to Modify the Administrative Subpoena and Response to Petition to Enforce Administrative Subpoena. I state these facts based on my personal knowledge and/or research I have personally conducted regarding the management of electronically stored information ("ESI") over the course of my professional career.

2. Since June 2014, I have served as the Chief of the Litigation Support Unit ("LSU"), of the Office of the Solicitor ("SOL"), at the U.S. Department of Labor ("DOL"). LSU is the component within SOL charged with providing litigation support services such as digital imaging and database creation, as well as providing advice, policy and procedure development, effective management of civil discovery, and litigation information management for all of SOL.

1

3.  I have practiced law since 1993 and focused particularly on litigation support, electronic discovery, and litigation information management since 1999.  I am admitted to practice law in the District of Columbia and the state of Maryland.  Prior to joining the Department of Labor, I worked in the private sector for approximately twenty (20) years, including time as an associate, senior attorney, and Counsel at three law firms and as a Principal focusing on e-discovery and litigation information management in two legal technology consulting companies.  I was a founding Co-Chair of the District of Columbia Bar Association Litigation Section E-Discovery Committee and have been active within the Sedona Conference Working Group on Electronic Document Retention and Production since 2003, where I served as the Editor-in-Chief of the 2011 edition of *The Sedona Conference® Database Principles: Addressing the Preservation & Production of Databases & Database Information in Civil Litigation*.  Over the course of my professional career, I have published over 100 articles on e-discovery, litigation information management, and legal technology topics.

4.  My current duties as LSU Chief include oversight and active management of SOL's team of litigation support specialists, as well as providing consultative advice and training on discovery and litigation information management to SOL case teams and the SOL community as a whole.  I also serve as one of SOL's "approvers" of SOL requests for electronically stored information ("ESI") that are sent to DOL's Office of the Chief Information Officer ("OCIO") via OCIO's "ESI Online" program, and I work closely with other SOL attorneys to help them craft efficient and effective complex search queries to retrieve relevant data from DOL's various electronic data repositories.

5.  In his Declaration, Mr. El-Tahch describes a process that Stout has proposed to collect, search, and produce ESI that is potentially responsive to DOL's Administrative Subpoena ("Subpoena").  This process, described in paragraph 17 of Mr. El-Tahch's Declaration, appears to rely largely on manual (*i.e.*, human) review of voluminous materials, rather than using any type of automation to speed the process and reduce the effort required.  The paragraph steps include: (1) manually notifying 107 custodians that they may have potentially responsive work product; (2) having each Stout Managing Director manually review and collect/copy files after assessing their responsiveness; (3) self-selection of materials by Managing Directors, where the more materials they select, the more work they create for themselves.  The same process also estimates that Stout's in-house counsel will spend 100-125 hours reviewing its engagement agreements for confidentiality provisions and contacting its clients as necessary, and that outside counsel will need to spend an additional 25-30 billable hours reviewing these materials and making privilege or redaction recommendations.

6.  As an alternative to this manual process, Mr. El-Tahch describes a more automated process, described in paragraphs 19-21 of his Declaration, that would require "more than thirty hours" and over thirty-five (35) calendar days to run and assess a single search query.  Mr. El-Tahch also states that this approach would require the duplication of over

thirty (30) terabytes of data and renting 30+ terabytes of storage to store a working copy of this data against which searches will be run.

7. Stout's proposed processes ignore multiple low-cost or free technology tools that would materially reduce the burden of complying with the Subpoena as well as greatly speed review of any potentially responsive materials.  For example, if Stout uses the Outlook/Exchange functionality of Microsoft Office365 to store and manage its e-mail, this tool comes with powerful built-in search tools that permit complex Boolean and date range searches to be run across multiple e-mail accounts with a single search query—with the search results de-duplicated before export to reduce redundancy and further reduce the amount of "eyes-on" human review that must take place.

8. Similarly, enterprise search tools such as dtSearch can be used to "crawl" documents stored *in situ* and create full text searchable indexes, again permitting complex Boolean and date range searches to be quickly run.  dtSearch is a long-established search tool that allows enterprises to "instantly search terabytes" of data.  *See* https://dtsearch.com/.  It is commonly used as the "hidden" enterprise search engine in multiple, better-recognized applications including the Filehold document management system and the Ringtail and and Relativity document review platforms used by many law firms.  In the case of document archives (files containing multiple documents, compressed to save storage space), including .PST or .ZIP format files, dtSearch is only one of multiple commercially available tools that indexes the individual documents within an archive and permits the selective export of documents within the archive without needing to expand or otherwise manipulate the source files.  These tools require adequate electronic storage where an index can be built, but these indexes are compressed and far smaller than the voluminous data that they are designed to index.  With a tool such as dtSearch, Stout would likely not need to create an isolated environment to store the documents indexed in the search.

9. Moreover, in using programs such as dtSearch, Stout could target its search to documents of only a particular file format or formats (for example, searching only .PDF files).  If the files at issue are of a similar nature and saved under common naming conventions, Stout could, as a first pass, create targeted search queries that search only file names, rather than the full text of the files.  Such targeted search strategies would likely significantly reduce the number of documents collected for further review by Stout and its counsel.

10. Finally, the El-Tahch Declaration makes no mention of the many document review platforms (Cloud-based or otherwise) into which ESI search results can be loaded for human review.  These tools, many of which are available on a short-term Software-as-a-Service ("SaaS") model, reduce the burden of reviewing and producing documents by permitting documents to be sorted in many different ways, such as by date, by sender/author, and by e-mail thread.  Many of these platforms also permit documents to be grouped by similarity (*e.g.*, "near-duplicate documents") or organized by potential

relevance through technology-assisted AI tools, further speeding review and reducing the human effort required. Use of such tools would permit speedy review and production, and it would also permit the easy implementation of rolling document productions, providing DOL faster access to documents as they are cleared by the reviewers.

I declare that the forgoing is true and correct.

Executed on this 15th day of October 2021.

_____

Conrad J. Jacoby